IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,556

DANNY E. BEAUCLAIR,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

When a K.S.A. 60-1507 movant advances a claim of actual innocence as a gateway to overcome the procedural bar of untimeliness under K.S.A. 60-1507(f), he or she is entitled to consideration of the merits of the motion if the claim of actual innocence meets the standard outlined in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

2.

A colorable claim of actual innocence based on a crime victim's recantation of the testimony that forms the basis for the charge against a defendant qualifies as an unusual event that prevented the defendant from raising the issue previously, and it excuses the procedural bar of successiveness under K.S.A. 60-1507(e).

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 4, 2016. Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed June 22, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Jonathan B. Phelps*, of Phelps-Chartered, of Topeka, argued the cause and was on the brief for appellant.

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Jodi E. Liftin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.:  This appeal addresses current law on whether a criminal defendant's claim of actual innocence excuses procedural defaults that would otherwise bar litigation of motions filed under K.S.A. 60-1507.

Defendant Danny E. Beauclair pleaded no contest in 2001 to one count of rape of a child under 14 years of age and one count of aggravated criminal sodomy of a child under 14 years of age. After an unsuccessful direct appeal, approximately two years after his original plea, Beauclair filed a motion to withdraw plea. The motion was based in part on a claim of newly discovered evidence, which consisted of a signed affidavit from the victim that, if believed, would have exonerated Beauclair of both crimes. At an evidentiary hearing on the motion, Beauclair's attorney did not secure the attendance of the recanting victim or admit live testimony from her. Because the victim was absent, the district court judge treated her affidavit as inadmissible hearsay and did not reach the merits of Beauclair's motion. On appeal, that decision was upheld.

Since that time, Beauclair has filed multiple pro se motions seeking relief on a variety of grounds. In this case, arising from a K.S.A. 60-1507 motion filed in August 2012, Beauclair raised a claim of ineffective assistance of counsel on an intervening K.S.A. 60-1507 motion. It is undisputed that the motion underlying this appeal was untimely and successive. To avoid the resulting procedural bars, Beauclair has argued

2

manifest injustice based on his claim of actual innocence. The district judge summarily denied Beauclair's August 2012 motion without an evidentiary hearing. A Court of Appeals panel affirmed. We granted Beauclair's petition for review.

As explained below, we hold that Beauclair's assertion of actual innocence entitles him to an evidentiary hearing to determine its credibility, specifically, whether it establishes manifest injustice or exceptional circumstances sufficient to require the district court to address the merits of his ineffective assistance of counsel claim.

FURTHER FACTUAL AND PROCEDURAL BACKGROUND

In 2001, two years after he was charged, Beauclair entered his no contest pleas. See *State v. Beauclair*, 281 Kan. 230, 231, 130 P.3d 40 (2006) (*Beauclair III*). The victim was Beauclair's stepdaughter. Beauclair's direct appeal, which challenged a technical error in his sentence, provided him no relief. See *State v. Beauclair*, No. 88,885, slip op. at 2 (Kan. App.) (*Beauclair I*) (unpublished opinion), *rev. denied* 276 Kan. 970 (2003).

In the motion to withdraw plea that followed, Beauclair advanced several arguments, including newly discovered evidence. The new evidence was that the victim had recanted her accusations in a signed declaration, which was attached to the motion. As mentioned, at the hearing on the motion, Beauclair's counsel did not require the recanting victim to appear and testify. District Judge Matthew J. Dowd rejected Beauclair's motion to withdraw plea, treating the declaration as inadmissible hearsay.

Beauclair appealed Judge Dowd's decision. A Court of Appeals panel reversed because Beauclair had been misinformed about the maximum sentence he faced. See *State v. Beauclair*, No. 91,999, 2005 WL 1805159, at *2 (Kan. App. 2005) (*Beauclair II*) (unpublished opinion), *rev'd* 281 Kan. 230. The panel did not reach the merits of

3

Beauclair's remaining issues, including his assertion that newly discovered evidence demonstrated his actual innocence.

This court granted review and reversed the panel's decision on the one sentencing issue it had addressed. The case was remanded to the Court of Appeals to address the remainder of Beauclair's issues. *Beauclair III*, 281 Kan. at 242.

On remand, the panel affirmed Judge Dowd's denial of Beauclair's motion to withdraw plea. See *State v. Beauclair*, No. 91,999, 2006 WL 3409225 (Kan. App. 2006) (*Beauclair IV*) (unpublished opinion), *rev. denied* 283 Kan. 930 (2007). It touched only briefly—and dismissively—on Beauclair's claim of exonerating new evidence.

> "Beauclair claims the trial court abused its discretion by ignoring the affidavit of the victim he presented which he claims exonerates him. When Beauclair pled, he waived the right to confront his accusers. *State v. Solomon,* 257 Kan. 212, 221, 891 P.2d 407 (1995).

> "Further, at any trial, the recantation affidavit would be looked upon '"with utmost suspicion."'*State v. Bryant,* 227 Kan. 385, 391, 607 P.2d 66 (1980)." *Beauclair IV*, 2006 WL 3409225, at *2.

In 2007, Beauclair filed a motion to correct his sentence. Among the issues he raised was a challenge to his sentence based on conviction of a "general" rather than a "specific" offense. According to Beauclair, "aggravated incest is a 'specific' offense, as compa[]red to rape and sodomy, a 'general' offense." In support of this argument, Beauclair noted that "the alleged victim has now done not just one, not just two, but now three signed 'Decla[]rations' against interest exonerating this Defendant of all Counts here." Beauclair did not, however, argue directly that actual innocence entitled him to relief.

4

Less than a month later, Beauclair filed a Motion to Withdraw Plea and Set Aside Judgment of Conviction and Memorandum in Support Thereof. One of the issues Beauclair raised was new evidence from the recanting victim. But the 30-plus-page pleading said little else on the topic:

"Recantation would be a job for a jury to decide, this case is an extraordinary and unusual case, as such the court should grant the illegal sentence here, and dismiss case for no jurisdiction and for Due Process violations also. . . . There is a showing of 'manifest injustice' by clear and convincing evidence here. But for counsel's performance was both deficient and prejudicial by not citing the statutes and how they appl[i]ed was deficient and prejudicial as the court in[ ]turn refused to consider the 'recantation' of the only witness that had 'direct examination' on Feb 27, 2001. As such, caused the defendant to stay in prison needlessly causing cruel and unusual punishment.

"The alleged victim has now signed a 3rd declaration dated 3-30-2007, which exonerates the defendant of all counts."

Then District Judge Evelyn Z. Wilson denied Beauclair's motion and later issued an order summarily denying Beauclair's motion to withdraw plea and a motion for rehearing of his motion to withdraw plea. According to Judge Wilson's order, the issues had already been "fully litigated."

Beauclair appealed all of Judge Wilson's rulings. In *State v. Beauclair*, No. 100,161, 2010 WL 596992, at *6 (Kan. App.) (*Beauclair V*) (unpublished opinion), *rev. denied* 290 Kan. 1096 (2010), a Court of Appeals panel affirmed. The panel applied the procedural rules for a K.S.A. 60-1507 motion to Beauclair's motion to withdraw plea and treated it as successive. The panel held that Beauclair had failed to allege, much less demonstrate, manifest injustice, which was necessary for it to entertain a successive motion. 2010 WL 596992, at *4. In addition, the panel addressed a new ineffective assistance of counsel claim raised for the first time on appeal. Beauclair had argued that

counsel at the original motion to withdraw hearing was ineffective for failing to present live testimony from the recanting victim. The panel concluded that Beauclair "never [sought] to justify the applicability of one of the exceptions" to permit the court to entertain an issue raised for the first time on appeal, a reference to the following exceptions: "(1) that the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) that the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or assign[ment of] a wrong reason for its decision." 2010 WL 596992, at *5 (citing *State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 [2008]). The panel also noted that "a recantation is generally viewed with suspicion" and said "Beauclair's admission of guilt to multiple individuals makes the victim's recantation suspect. Therefore, it is highly doubtful the court would have given much weight to [the victim's] testimony." *Beauclair V*, 2010 WL 596992, at *6.

After the Court of Appeals decision, Beauclair continued to file pro se motions:

- March 22, 2011: Motion to Correct Breach of Plea Bargain.
- March 22, 2011: Motion for Recusal.
- April 11, 2011: Motion to Correct Illegal Sentence.
- April 20, 2011: Motion to Correct Breach of Diversion.
- June 2, 2011: Motion for Resentencing Hearing.

In a July 2011 Memorandum Decision and Order, Judge Wilson denied Beauclair's motion for recusal. A month later she issued another Memorandum Decision and Order addressing the four remaining motions, denying each as "successive and an abuse of remedy."

This pattern continued the next year when Judge Wilson denied another of Beauclair's motions—this time, a Motion to Correct Illegal Sentence—in March 2012. Again, Judge Wilson denied the motion as successive and an abuse of remedy.

On August 2, 2012, Beauclair filed the pro se K.S.A. 60-1507 motion that has led to this appeal. The motion raised five issues: (1) actual innocence; (2) violation of due process through the State's reliance on diversion statements; (3) violation of due process because of the judge's failure to inform Beauclair of his right against compulsory self-incrimination; (4) violation of due process through failure to inform Beauclair that he would have to serve postrelease supervision; and (5) violation of due process because Beauclair was convicted without a recitation of facts supporting each element of the crimes. Beauclair also asserted that his claim of actual innocence constituted manifest injustice entitling him to withdraw his pleas.

Beauclair noted that

"he is actually innocent of the offense asserting that his main accusers have now recanted/repudiated prior recantations. He attaches the affidavits which delve deeper into the substantive allegations, than that testified to by [M.M.] There . . . are also substantive affidavits by other family members who were privy to the allegations and offer intrinsic evidence and extrinsic evidence as to why the allegations were made in the first place."

Beauclair attached 22 affidavits and declarations from the victim and others who had previously alleged abuse by Beauclair and from family members familiar with the circumstances surrounding the original allegations and his subsequent plea agreement. Rather than arguing actual innocence as a stand-alone claim for relief, Beauclair appears to have argued it as a "gateway" claim to excuse his procedural defaults and allow the court to reach the merits of his other claims.

7

Beauclair acknowledged what the Court of Appeals had stated: "[R]ecanted affidavits are looked upon with suspicion." Nonetheless, he asserted, "the law requires an evidentiary hearing in order to allow defense to establish challenged testimony was false. The Court cannot simply make a conclusory denial to believe the challenged testimony and disbelieve recanted testimony."

In June 2013, Beauclair filed a pro se supplement to his pending K.S.A. 60-1507 motion labeled "Supplemental Petition of Habeas Corpus." In this supplement, Beauclair argued that his original postconviction counsel had been ineffective. The focus of the claim was the original motion to withdraw plea. Among other things, Beauclair included as grounds counsel's failure to have the recanting victim testify. Beauclair also raised a litany of other issues, alleging that his direct appeal counsel was ineffective; that his pleas were not intelligently entered; that the State breached its contract with him by not allowing him to be placed on diversion; that the lawyers who represented him at the time of his sentencing were ineffective; that his pleas were coerced; that the trial court lost jurisdiction over his case when it failed to find probable cause at an early hearing; and that his counsel was ineffective at the time of his plea hearing. Beauclair requested a full evidentiary hearing on the motion.

In a July 2013 Memorandum Decision and Order, Judge Wilson concluded that the motion, files, and record "conclusively show that Beauclair is not entitled to relief." As a result, an evidentiary hearing was not necessary and the motion was summarily denied.

Judge Wilson concluded that Beauclair's K.S.A. 60-1507 motion was time-barred even if the court began the K.S.A. 60-1507 one-year clock when Beauclair's last motion to withdraw plea became final on April 4, 2007: Beauclair's "opportunity to timely file,

8

absent manifest injustice, ended April 4, 2008." On the subject of manifest injustice, Judge Wilson discounted Beauclair's actual-innocence claim:

> "In an attempt to avoid these procedural bars, Beauclair argues that his main accusers have recanted their statements, which he claims proves he is actually innocent of the crimes for which he was convicted. In support, Beauclair attached a number of affidavits to his motion. To establish actual innocence, a petitioner must demonstrate that 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The Court is not persuaded that Beauclair has met his standard to prove he is actually innocent.

> "Beauclair's reliance on the affidavits is neither new nor persuasive. Beauclair argued in a prior Motion to Withdraw Plea that an affidavit from the victim exonerated him. The Kansas Court of Appeals rejected this argument. . . . In addition, Beauclair presented many of the same affidavits with his previous 'Motion for Resentencing Hearing[,]' which the Court denied in July 2011. Accordingly, Beauclair's actual innocence claim does not excuse him from the bar against successive motions. Beauclair has made several previous attempts to set aside his convictions and sentences, all of which have been unsuccessful. All of Beauclair's current claims could have, and should have, been raised on his direct appeal or in one of his previous motions to withdraw plea. In addition, even considering Beauclair's current claims on the merits, the Court determines Beauclair is not entitled to relief."

Judge Wilson then briefly addressed each of Beauclair's grounds for relief and concluded that he was not entitled to relief on any of them. Her decision included Beauclair's claim of ineffective assistance of his postconviction counsel, which had been raised in his supplement.

> "Beauclair fails to [show] how his counsel's performance fell below an objective standard and, if so, how that performance created prejudice.

9

"In his supplemental petition, Beauclair claims that his post-conviction counsel was ineffective because he failed to raise specific claims and cite to specific cases, which Beauclair alleged causes prejudice. Beauclair's arguments merely reflect discontent with the strategy of his counsel, which is not enough to meet his burden to establish ineffective counsel. Therefore, the Court will deny relief for this claim as well.

"In summary, Beauclair's Petition is time barred absent a showing of manifest injustice, which Beauclair fails to establish. Additionally, Beauclair's continued submission of petitions is successive pursuant to Supreme Court Rule 183(d); therefore the Court is not required to revisit and can deny any motions as an abuse of remedy. Last, many of Beauclair's claims have previously been decided and the law of the case doctrine precludes reconsideration of those issues."

On Beauclair's appeal to the Court of Appeals, once he had the benefit of counsel, he raised three issues: (1) whether his ineffective assistance of counsel claim was time-barred or successive; (2) whether he should be permitted to raise an additional constitutional issue for the first time on appeal; and (3) whether the district judge erred in summarily denying his claim of ineffective assistance of counsel. The new issue Beauclair had sought to raise on appeal was ineffective assistance of his plea counsel because of her dual representation of Beauclair and his wife. Beauclair sought reversal of his convictions and remand to the district court for new trial. In the alternative, he asked that now Chief Judge Wilson's ruling on his motion be reversed and the case remanded for a district court evidentiary hearing on its merits.

Our Court of Appeals rejected Beauclair's claims and affirmed the district court. See *Beauclair v. State*, No. 112,556, 2016 WL 852859 (Kan. App. 2016) (*Beauclair VI*) (unpublished opinion).

The panel began its analysis by outlining procedural limitations on pursuit of a K.S.A. 60-1507 motion and then said that a movant may avoid the one-year time bar of

K.S.A. 60-1507(f) only to prevent manifest injustice. The panel listed three factors outlined in *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), *superseded by statute as stated in Hayes v. State*, 307 Kan. 9, 14, 404 P.3d 676 (2017), for determining the existence of manifest injustice, including whether a prisoner sets forth a "colorable claim of actual innocence." But the panel ultimately decided Beauclair had failed to demonstrate that the factors favored him. Regarding actual innocence, the panel recognized that

> "[a]n affidavit or declaration purportedly from a crime victim exonerating a defendant because the charged offense never happened commonly might tilt in favor of an evidentiary hearing even on an untimely 60-1507 motion, since it bears on actual innocence and, if true, presents a factual ground for relief worthy of further consideration." *Beauclair VI*, 2016 WL 852859, at *2.

But the panel discounted the recantation of the victim here because "Beauclair told the Topeka police detective that he sexually abused his stepdaughter in ways that factually and legally supported the charges to which he later pleaded no contest." 2016 WL 852859, at *2. Ultimately, the record did not "sufficiently advance a claim that Beauclair is actually innocent and, thus, to suggest there might be manifest injustice in applying the time bar of K.S.A. 60-1507(f) to his motion." 2016 WL 852859, at *3.

The panel also rejected Beauclair's newly raised claim of ineffective assistance of plea counsel. It explained its reasoning:

> "The conflict is this: For about 6 weeks in mid-1999, the lawyer who was then representing Beauclair in the criminal investigation of his stepdaughter's accusations was also representing the girl's mother—Beauclair's wife—in [an ongoing child in need of care] case. During that time, another lawyer represented Beauclair in the CINC case. As best we can tell from the record on appeal in this case, the district court judge handling the CINC case simply allowed the lawyers in that proceeding to switch clients. So the

11

lawyer representing Beauclair in the criminal investigation also represented him in the CINC case from that point. All of that took place months before the State filed criminal charges against Beauclair." 2016 WL 852859, at *3.

The panel assumed, without deciding, that the dual representation was improper but concluded that at most it was "a potential or technical conflict with respect to the criminal case." 2016 WL 852859, at *4. "In the face of the evidence in the criminal case, the decision to plead hardly seems unreasonable or the product of some purported conflict arising from the CINC proceedings." 2016 WL 852859, at *4. "[T]he issue simply does not establish a claim worthy of review in a collateral attack on a conviction launched years after the fact." 2016 WL 852859, at *4.

Beauclair filed a petition for review by this court, raising two issues: (1) whether he has stated a colorable actual-innocence claim and (2) whether he has shown actual prejudice because of his plea counsel's conflict in representing both him and his wife. He sought a district court evidentiary hearing on his claim of actual innocence. We granted review.

As framed by Beauclair's petition, his two issues are intertwined. Beauclair relies on his actual-innocence claim to overcome the fact that his K.S.A. 60-1507 motion would otherwise be barred as untimely. The panel rejected this approach, based in part on what it understood to be Beauclair's "confession" of his crimes against his stepdaughter to a police detective; Beauclair had not directly disputed that fact before the Court of Appeals. But, in his petition to this court, Beauclair argues that the "confession" the panel relied on was false, coerced by his plea counsel to benefit Beauclair's wife. He then details multiple problems with plea counsel's representation that he attributes to her conflict of interest, attempting to establish prejudice from her ineffective assistance. The deficient representation, he asserts, "relates to his colorable claim of actual innocence in that her

12

legal advice to him was that he must confess to a crime he did not commit in order to be reintegrated with his children and be granted diversion."

DISCUSSION

Our standard of review on denial of a K.S.A. 60-1507 motion is dependent on the means the district court employed to dispose of it. A district court has three options to resolve such a motion:

"(a) determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (b) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held after appointment of counsel. If the court then determines there is no substantial issue, the court may deny the motion; or (c) determine from the motion, files, records, or preliminary hearing that there is a substantial issue requiring an evidentiary hearing." *Fischer v. State*, 296 Kan. 808, Syl. ¶ 3, 295 P.3d 560 (2013).

For a summary dismissal of a K.S.A. 60-1507 motion, the standard of review is de novo. An appellate court must determine whether the motion, files, and records of the case conclusively show that the movant is entitled to no relief. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015).

*Untimeliness*

We first note that after Beauclair filed the K.S.A. 60-1507 motion now before us, the Legislature amended the portion of the statute governing the one-year time limit. At the time of filing, K.S.A. 60-1507(f) provided that any action under the section must be brought within one year of the movant's direct appeal becoming final, unless the time limit was extended "to prevent a manifest injustice."

13

In 2014's *Vontress*, we set out the following nonexhaustive list of factors to assist in determining whether the manifest injustice standard had been met:

"(1) whether the prisoner provides persuasive reasons or circumstances that prevented him or her from filing the K.S.A. 60-1507 motion within the 1-year time limitation; (2) whether the merits of the prisoner's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) whether the prisoner sets forth a colorable claim of actual innocence." 299 Kan. 607, Syl. ¶ 8.

In 2016, the Legislature amended the statute and abrogated *Vontress*. The amendment made "it clear that courts are limited to considering (1) a movant's reasons for the failure to timely file the motion and (2) a movant's claims of actual innocence." *Hayes*, 307 Kan. at 14; see also K.S.A. 2017 Supp. 60-1507(f)(2)(A). Under the new statute, "actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2017 Supp. 60-1507(f)(2)(A). As discussed below, the additional explanation of "actual innocence" in the Legislature's recent amendment informs our analysis of what Beauclair must demonstrate to overcome the procedural bar erected by the untimeliness of his motion.

Before *Vontress*, Kansas appellate courts were inconsistent in interpreting "manifest injustice" in a K.S.A. 60-1507 context. Most reviewing courts focused on the reasons for the delay rather than the merits of the motion. *Vontress*, 299 Kan. at 614. After *Vontress*' clarification of the standard, few decisions addressed actual innocence and the procedures for asserting it. Two Court of Appeals opinions in this period, however, are worth addressing.

In *Woods v. State*, 52 Kan. App. 2d 958, 379 P.3d 1134 (2016), *rev. denied* 306 Kan. 1332 (2017), a Court of Appeals panel addressed whether a prisoner who had

14

pleaded guilty could use an actual-innocence claim to have his successive and untimely K.S.A. 60-1507 motion heard. The movant had previously challenged his plea but failed to have it withdrawn. The panel concluded it was required to "accept as both a matter of fact and a matter of law that [the prisoner's] plea was freely and voluntary entered upon the advice of competent and effective counsel." 52 Kan. App. 2d at 966. Moreover, "'[a] plea of guilty is admission of the truth of the charge and every material fact alleged therein.'" 52 Kan. App. 2d at 966 (quoting K.S.A. 22-3209[1]). Ultimately, "upon a plea of guilty, there can be no review of the sufficiency of the evidence in a K.S.A. 60-1507 proceeding." 52 Kan. App. 2d at 967.

In *Neer v. State*, No. 111,230, 2015 WL 1310815 (Kan. App. 2015) (unpublished opinion), a Court of Appeals panel addressed movant Edward Neer's out-of-time K.S.A. 60-1507 motion in which he argued that newly discovered evidence entitled him to a new trial. Neer had attached an affidavit to his motion in which the victim recanted her trial testimony and stated Neer was innocent. Because of questions about the credibility of the recantation given the time that had passed since Neer's conviction, the district judge denied the motion without an evidentiary hearing.

On appeal, the panel applied an abuse of discretion standard to the district judge's denial of an evidentiary hearing.

"[B]efore a new trial is granted based on a prosecution witness' recantation of his or her testimony, the district court must determine the truth of the recantation as well as the weight that should be given to it. The district court is required to grant a new trial only when satisfied the recantation is true and material. . . . [A] district court cannot make such a credibility determination without an evidentiary hearing. And . . . credibility cannot generally be determined through cold affidavit testimony.

15

"To establish the right to a new trial based upon newly discovered evidence, it must be of such materiality that it would be likely to produce a different result upon retrial. And while it certainly can be argued that 'recantation by the complaining witness or victim would generally fulfill this materiality requirement,' we are only faced with the narrow question whether the district court abused its discretion in not granting an evidentiary hearing. [Citations omitted.]" *Neer*, 2015 WL 1310815, at *4.

To determine whether Neer's claims warranted an evidentiary hearing, the panel turned to the three factors an appellate court considers when determining whether an evidentiary hearing is needed on a request for a new trial based on newly discovered evidence. See *Moncla v. State*, 285 Kan. 826, 840, 176 P.3d 954 (2008). Those factors are:

"(1) whether the motion alleges facts which do not appear in the original record which, if true, would entitle [the movant] to relief; (2) whether the motion adequately identifies readily available witnesses whose testimony would support these new facts and demonstrate that [the movant] should receive a new trial; and (3) whether [the movant's] newly discovered evidence could have been produced at trial through the exercise of reasonable diligence." 285 Kan. at 840.

The panel concluded that Neer was entitled to an evidentiary hearing. "[T]he affidavit clearly allege[d] facts that, if true, would . . . support Neer's claim of innocence." *Neer*, 2015 WL 1310815, at *6. And, given the ability of a court to compel the witness' attendance and testimony, any "reluctance of a witness to testify" did not "foreclose Neer's right to an evidentiary hearing." 2015 WL 1310815, at *6. An evidentiary hearing was necessary for the court "to assess the credibility of [the witness'] recantation and its materiality to Neer's convictions in this case." 2015 WL 1310815, at *7.

16

*Woods* is significant mainly because the movant in that case had entered a guilty plea, thus admitting all of the facts underlying the criminal charge. Beauclair, in contrast, entered no contest pleas that did not constitute legally binding admissions of guilt.

*Neer* is significant for at least two reasons. First, in holding that an evidentiary hearing was necessary, the panel correctly emphasized the importance of a district judge's ability to assess the credibility of witnesses who had changed their stories and, at least in the first instance, to measure the materiality of the new information in relation to the movant's conviction.

Neer's actual-innocence claim also arose under different procedural circumstances than those surrounding Beauclair's. As to the motion before us now, Beauclair has asserted his actual-innocence claim as a gateway to defeat the procedural time bar that otherwise prohibits reaching the merits of his substantive claims. Neer, on the other hand, asserted a substantive claim of actual innocence, arguing that newly discovered evidence established he was actually innocent and required a new trial.

In addressing assertions of actual innocence in federal habeas corpus proceedings, the United States Supreme Court has differentiated between procedural and substantive claims.

In *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), petitioner Lloyd E. Schlup alleged that constitutional error deprived his jury of critical evidence establishing his innocence. The district court denied Schlup's petition without conducting an evidentiary hearing and declined to reach its merits. The United States Supreme Court granted certiorari to consider whether a standard enunciated in *Sawyer v. Whitley*, 505 U.S. 333, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992), provided adequate

protection "against the kind of miscarriage of justice that would result from the execution of a person who is actually innocent." 513 U.S. at 301.

In *Sawyer*, a federal habeas petitioner alleged that he was innocent of aggravators that would authorize imposition of the death penalty rather than alleging that he was innocent of the underlying crime. To show "actual innocence," the Court held, "one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." 505 U.S. at 335.

The *Schlup* Court rejected the *Sawyer* standard in favor of one first articulated in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). *Carrier* stated: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U.S. at 496.

The *Schlup* Court distinguished Schlup's procedural actual-innocence claim from the substantive actual-innocence claim asserted by habeas petitioner Leonel Torres Herrera in *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).

> "In *Herrera,* the petitioner advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the Eighth Amendment. Under petitioner's theory in *Herrera,* even if the proceedings that had resulted in his conviction and sentence were entirely fair and error free, his innocence would render his execution a 'constitutionally intolerable event.' *Id.,* at 419 (O'Connor, J., concurring)." *Schlup*, 513 U.S. at 314.

18

The *Herrera* Court had observed: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. at 400. The rule had been grounded "in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." 506 U.S. at 400. Although Herrera's substantive claim was not grounded in an independent constitutional violation that had occurred during trial, the Court left open the possibility of entertaining such claims.

In contrast, in the *Schlup* case involving a procedural actual-innocence claim, the Court said:

"His constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel . . . and the withholding of evidence by the prosecution . . . denied him the full panoply of protections afforded to criminal defendants by the Constitution. Schlup, however, faces procedural obstacles that he must overcome before a federal court may address the merits of those constitutional claims. Because Schlup has been unable to establish 'cause and prejudice' sufficient to excuse his failure to present his evidence in support of his first federal petition, . . . Schlup may obtain review of his constitutional claims only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice[.'] Schlup's claim of innocence is offered only to bring him within this 'narrow class of cases.'" *Schlup*, 513 U.S. at 314-15.

In short, based on the distinction between procedural and substantive actual-innocence claims, the Court concluded that Schlup should not face as high a burden of proof as Herrera. Schlup's claim of innocence would not provide a basis for relief in and of itself. Relief would be dependent upon Schlup's later ability to demonstrate the merit of his substantive claims under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (setting standard for relief for ineffective assistance of counsel), and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (setting

standard for relief when government has withheld exculpatory evidence). *Schlup*, 513 U.S. at 315. Schlup's claim of innocence was "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" 513 U.S. at 315 (citing *Herrera,* 506 U.S. at 404).

More important, "a court's assumptions about the validity of the proceedings that resulted in conviction are fundamentally different in Schlup's case than in Herrera's." 513 U.S. at 315. In *Herrera,* the claim had been evaluated on the assumption that Herrera's trial had been error free. "In such a case, when a petitioner has been 'tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants,' . . . it is appropriate to apply an '"extraordinarily high"' standard of review." 513 U.S. at 315-16. In contrast, Schlup's actual-innocence claim was coupled with a claim of constitutional error at trial.

> "For that reason, Schlup's conviction may not be entitled to the same degree of respect as one, such as Herrera's, that is the product of an error free trial.
>
> ". . . Schlup's evidence of innocence need carry less of a burden. In *Herrera* . . . the evidence of innocence would have had to be strong enough to make his execution 'constitutionally intolerable' *even if* his conviction was the product of a fair trial. For Schlup, the evidence must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Schlup*, 513 U.S. at 316.

To ensure that application of the federal exception allowing disregard of procedural bars would remain "rare" and invoked in the "extraordinary case" while ensuring that it would extend relief "to those truly deserving," the Court tied the exception to the petitioner's claim of innocence.

20

"[A] prisoner retains an overriding 'interest in obtaining his release from custody if he is innocent of the charge for which he was incarcerated. That interest does not extend, however, to prisoners whose guilt is conceded or plain.' . . . . '[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.' 477 U.S., at 496; see also *Smith v. Murray*, 477 U.S., at 537, quoting *Carrier*, 477 U.S., at 496.

. . . .

". . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. . . .

". . . [T]he individual interest in avoiding injustice is most compelling in the context of actual innocence. . . . [C]oncern about the injustice that results from the conviction of an innocent person . . . is reflected, for example, in the 'fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.'" 513 U.S. at 321, 324, 325 (quoting *In re Winship,* 397 U.S. 358, 372, 90 S. Ct. 1068, 25 L. Ed. 2d 368 [1970] [Harlan, J., concurring])." *Schlup*, 513 U.S. at 321-25.

The *Schlup* Court invoked *Carrier*'s requirement that a federal habeas petitioner show that a constitutional violation has "probably" resulted in the conviction of one who is actually innocent:

"To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice. At the same time, the showing of 'more likely than not' imposes a lower burden of proof than the 'clear and convincing' standard required under *Sawyer.* The *Carrier*

21

standard thus ensures that petitioner's case is truly 'extraordinary,' *McCleskey,* 499 U.S., at 494, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice.

. . . .

".  . . In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Schlup*, 513 U.S. at 327-28.

But the consideration of a broader array of evidence does not change the meaning of "innocence" in federal court. "The *Carrier* standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt." *Schlup*, 513 U.S. at 327-28.

The high Court has since further refined the contours of the *Carrier* test it adopted in *Schlup*.

In *House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), the Court made clear that the types of "new reliable evidence" it had previously listed—exculpatory scientific evidence, trustworthy eyewitness accounts, critical physical evidence—were not intended to exhaust the possibilities. 547 U.S. at 537. The Court also observed that, after fully developing a record, a

22

"habeas court must consider '"all the evidence,"' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' . . . Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.' . . . The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." 547 U.S. at 538.

The *Carrier* standard "does not require absolute certainty about the petitioner's guilt or innocence." 547 U.S. at 538. The petitioner's burden at the gateway stage is merely to demonstrate "that more likely than not any reasonable juror would have reasonable doubt." 547 U.S. at 538. And,

"[b]ecause a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. . . . [T]his may include consideration of 'the credibility of the witnesses presented at trial.'" 547 U.S. at 538-39.

This court has not previously addressed what constitutes "a colorable claim of actual innocence," regardless of whether actual innocence was advanced as a procedural tool, as here, or as an independent substantive claim. The preamendment version of K.S.A. 60-1507 mentioned only manifest injustice. K.S.A. 60-1507(f)(2). *Vontress* listed factors to be considered under the rubric of manifest injustice; yet it did not fully elaborate on the contours of actual innocence. See *Vontress*, 299 Kan. at 616.

The Legislature's recent amendment in K.S.A. 2017 Supp. 60-1507(f)(2)(A) is more revealing and instructive. It not only mentions "a colorable claim of actual innocence" as a basis for finding manifest injustice but also mirrors the federal *Carrier* standard. Compare K.S.A. 2017 Supp. 60-1507(f)(2)(A) ("more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence"), with

23

*Schlup*, 513 U.S. at 327 ("more likely than not that no reasonable juror would have convicted him in the light of the new evidence"). This striking congruence in language and the United States Supreme Court's thorough articulation of the appropriateness of such a standard when a court is confronted with an actual-innocence claim used as a gateway beyond a procedural default in a postconviction proceeding combine to persuade us to adopt the *Carrier* standard as well.

Applying that standard to Beauclair's actual-innocence claim, we turn first to his petition for review argument that he clearly stated in his K.S.A. 60-1507 motion that he is innocent of the crimes underlying his convictions, and that, further, his statement was made under oath and should therefore be taken as true at this stage of the proceedings.

We reject this argument as untenable. See *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007) (K.S.A. 60-1507 movant must make more than conclusory contentions, must state evidentiary basis in support of claims, or evidentiary basis must be in record before motion warrants evidentiary hearing). The practical result of this court adopting Beauclair's position would be evisceration of the one-year time limit. Every late K.S.A. 60-1507 motion could allege actual innocence on the movant's word alone as a gateway to consideration of the motion's merits. As the United States Supreme Court noted in *Schlup*, an exception comparable to Kansas' "manifest injustice" should remain "rare'" and be applied only in the "extraordinary" case. 513 U.S. at 321. Beauclair's suggested rule would make application of the exception anything but "rare" and "extraordinary."

That being said, Beauclair's further criticism of the Court of Appeals panel's weighing of the statements in the affidavits and declarations supporting his motions is on the mark.

24

K.S.A. 60-1507(b) requires a hearing on a motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The affidavits and declarations at issue in this case prevent a court from reaching the necessary conclusion under the K.S.A. 60-1507(b) standard, when it is correctly applied.

As the panel acknowledged in its opinion,

"An affidavit or declaration purportedly from a crime victim exonerating a defendant because the charged offense never happened commonly might tilt in favor of an evidentiary hearing even on an untimely 60-1507 motion, since it bears on actual innocence and, if true, presents a factual ground for relief worthy of further consideration." *Beauclair VI*, 2016 WL 852859, at *2.

Nevertheless, the panel apparently felt free to disregard the affidavits and declarations. According to it, "Beauclair told the Topeka police detective that he sexually abused his stepdaughter in ways that factually and legally supported the charges to which he later pleaded no contest." 2016 WL 852859, at *2. The panel used the factual conflict it perceived between the affidavits and declarations on the one hand and Beauclair's earlier statement to the detective on the other to conclude that Beauclair had not sufficiently advanced a claim of actual innocence. 2016 WL 852859, at *3. This is *not* the same thing as holding that the materials before the court "conclusively" foreclosed relief. If relief was not conclusively foreclosed, Beauclair would have a statutory right to advance his substantive claims.

The panel's harsh credibility assessment of the recantations and its attendant weighing and resolution of apparent factual conflict are not the tasks of appellate courts. See *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011). In addition, we cannot ignore new information that has come to light in proceedings before us on Beauclair's petition for review.

This new information includes Beauclair's allegation that his statement to the detective was untrue—a product of his conflicted plea counsel's insistence that he take responsibility for the crimes to benefit counsel's other client, Beauclair's wife, in the CINC litigation. Moreover, Beauclair asserts, with some support in correspondence with plea counsel, that counsel told him his selfless admission of guilt would make him eligible for a diversion, allowing him and his family to be reunited.

Simply put, because the recantations and Beauclair's explanation of why he would have made a false confession may meet the *Carrier* standard as it is now echoed in K.S.A. 2017 Supp. 60-1507(f)(2)(A)—i.e., they may make it more likely than not that no reasonable juror would have convicted him—we remand to the district court for an evidentiary hearing in which the judge hears live testimony on the gateway claim of actual innocence. That claim will qualify as "colorable" if there is "sufficient doubt" about Beauclair's guilt "to undermine confidence" in his conviction "without the assurance" that the conviction "was untainted by constitutional error." See *Schlup*, 513 U.S. at 317. If that threshold is reached, the one-year time limit of K.S.A. 60-1507(f) should be excused and the district judge should then address the merits of Beauclair's K.S.A. 60-1507 motion.

*Successiveness*

Judge Wilson also denied Beauclair's motion because it qualified, in her view, as successive. The Court of Appeals did not expressly address whether Beauclair's actual-innocence claim could excuse this procedural infirmity, but we must, because successiveness poses an independent obstacle to consideration of the substantive merits of Beauclair's motion.

26

Under K.S.A. 60-1507(c), a sentencing court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner. See also Supreme Court Rule 183(d) (2018 Kan. S. Ct. R. 223) (sentencing court may not consider successive motion by same movant when ground for relief determined against movant in prior motion; prior determination on merits; and justice not served by reaching merits of subsequent motion); *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013) (K.S.A. 60-1507 movant presumed to have listed all grounds for relief). To avoid having a second or successive K.S.A. 60-1507 motion dismissed as an abuse of remedy, the movant must establish exceptional circumstances. *State v. Mitchell*, 284 Kan. 374, Syl. ¶ 5, 162 P.3d 18 (2007). "Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant [from] raising the issue in a preceding [K.S.A.] 60-1507 motion." 284 Kan. 374, Syl. ¶ 5. The burden to make such a showing lies with the movant. *Wimbley v. State*, 292 Kan. 796, 805, 275 P.3d 35 (2011).

We have no hesitation in holding that a colorable claim of actual innocence based on a crime victim's recantation of the testimony that forms the basis for the charge against a defendant qualifies as "an unusual event . . . that prevented the defendant [from] raising the issue" previously. Thus, if Beauclair is successful on remand in showing a colorable claim under the *Carrier* standard, he will meet not only the manifest injustice standard to excuse untimeliness but also the exceptional circumstances standard to excuse successiveness. On the way to this conclusion, we also note that Beauclair's earliest effort to draw the district court's attention to the validity or lack of validity of his actual innocence claim was stymied by his K.S.A. 60-1507 counsel's failure to secure live testimony from Beauclair's stepdaughter. The remand for an evidentiary hearing on actual innocence that we order today will provide an opportunity to remedy counsel's omission and the subsequent—and possibly undue—short shrift given Beauclair's actual-innocence claim by district and appellate judges.

27

CONCLUSION

We reverse the Court of Appeals decision affirming the district court's summary denial of Danny E. Beauclair's K.S.A. 60-1507 motion and remand to the district court for an evidentiary hearing on his gateway claim of actual innocence. Should that claim be determined to be colorable under the standard this court has described above, the untimeliness and successiveness of Beauclair's motion shall not bar consideration of its merits.

LUCKERT and ROSEN, JJ., not participating.

MICHAEL J. MALONE, Senior Judge, and F. WILLIAM CULLINS, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone and District Judge Cullins were appointed to hear case No. 112,556 vice Justice Luckert and Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616 and by art. 3, § 6(f) of the Kansas Constitution respectively.