NOT DESIGNATED FOR PUBLICATION

No. 121,351

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

AARON R. ALGER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed March 6, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  Aaron R. Alger appeals the district court's summary denial of his third K.S.A. 60-1507 motion as successive. Alger concedes that his motion is successive, but he argues that the new medical evidence he presented established exceptional circumstances warranting an evidentiary hearing. Finding no merit in Alger's claim, we affirm the district court's judgment.

FACTS

The Kansas Supreme Court and a panel of this court detailed the facts underlying Alger's conviction in *State v. Alger*, 282 Kan. 297, 298, 145 P.3d 12 (2006) (*Alger I*), and

*Alger v. State*, No. 102,453, 2011 WL 767886 (Kan. App. 2011) (unpublished opinion) (*Alger II*). We will provide only a summary of the facts here.

On August 29, 2003, Alger and Alexis dropped Alexis' mother off at work around 12:30 p.m. Shortly after returning home, Alger discovered Alexis lying face down on the floor. Emergency medical services arrived at 12:47 p.m. and took Alexis to the hospital. Alexis died on September 1, 2003.

In an interview with a police detective after receiving his *Miranda* rights, Alger admitted that he had lost control with Alexis and that he had shaken her on at least two previous occasions, the most recent occurring two days before she went to the hospital. Alger stated that "'[he] was tired and cranky, didn't want to hear it, and [he] slammed her on the potty and shook her.'" *Alger I*, 282 Kan. at 300.

At trial, the testimony focused on Alexis' cause of death and when the fatal injury occurred. The State's theory was that the injury occurred during the 15-20 minutes Alger was alone with Alexis on August 29, 2003. The State's two experts testified that Alexis suffered closed cranial injuries caused by shaking or impact with an external source. The State's experts testified that right after Alexis suffered the injury, she would not have been acting normal and would have exhibited symptoms ranging from irritability to seizures and the onset of a semicomatose state.

Alger's theory of the case was that the injury occurred before he was alone with Alexis on August 29, 2003. Alger called a pediatric neurologist who testified that Alexis sustained one or multiple blows to her head and that the onset of symptoms from such an injury would not be immediate. He testified that the fatal injury occurred hours or days before Alexis exhibited the symptoms.

Alger also testified at trial. He admitted that he had gotten rough with Alexis two days before she was found unconscious, when she was screaming and ornery and indicated that she needed to go to the bathroom. He said that he "'picked her up, shook her a little bit—got the hair out of her face . . . and sat her down on the potty,'" but the shaking was "'not harmful.'" 282 Kan. at 301.

The jury found Alger guilty of felony murder and child abuse. The district court vacated the child abuse conviction based on double jeopardy and sentenced Alger to life in prison. The Kansas Supreme Court affirmed his conviction and issued the mandate in November 2006. 282 Kan. at 306.

In 2007, Alger filed his first K.S.A. 60-1507 motion, arguing that trial counsel was ineffective for failing to call another expert witness and failing to object to the admission of the recording of his third interview. The district court denied the motion and this court affirmed. *Alger II*, 2011 WL 767886, at *8. This court found that counsel was not ineffective in not calling the proposed expert because the expert's testimony—that the injury occurred a few days before Alexis' time of death—was not inconsistent with the State's theory. 2011 WL 767886, at *5. This court also found that it was reasonable trial strategy for defense counsel to allow the interview to be admitted because counsel wanted the jury to see that Alger never confessed to the crime even when pressed by the police. 2011 WL 767886, at *6-8.

According to Alger's current motion, in June 2016, Alger filed his second K.S.A. 60-1507 motion, arguing new evidence. The district court denied the motion as untimely. Alger did not appeal the district court's ruling, and the motion does not appear in the record. Thus, it is unknown what new evidence Alger cited in that motion.

On April 28, 2017, Alger filed a motion in his criminal case entitled "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to K.S.A. § 60-1507." The motion was

once again based on new evidence. Alger's new evidence was an affidavit by Dr. Harry J. Bonnell, a forensic pathologist in California, signed on September 21, 2015. In the affidavit, Bonnell opined that some of the medical concepts cited by the State's experts at Alger's trial have since been disproven. Alger argued that he showed exceptional circumstances warranting an evidentiary hearing because this new evidence emerged "as a legitimate position in the medical community . . . in the years following his trial and his initial [K.S.A.] 60-1507 hearing." On June 29, 2017, the district court summarily denied the motion as successive. Alger now appeals.

ANALYSIS

On appeal, Alger claims the district court erred by summarily denying his motion. When a district court summarily denies a movant's K.S.A. 60-1507 motion without a hearing, this court applies a de novo standard of review to determine whether the motion, files, and records of the case conclusively show that the movant is entitled to no relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

Under K.S.A. 2019 Supp. 60-1507(c), a sentencing court need not entertain a successive motion for similar relief on behalf of the same prisoner. The reason for this limitation "is the necessity for some degree of finality in the criminal appeal process in order to prevent endless piecemeal litigation." *Toney v. State*, 39 Kan. App. 2d 944, 948, 187 P.3d 122 (2008). The court presumes that the movant listed all grounds for relief in his or her first K.S.A. 60-1507 motion, and a subsequent motion need not be considered unless the movant establishes exceptional circumstances. *Beauclair*, 308 Kan. at 304. "'Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant [from] raising the issue in a preceding [K.S.A.] 60-1507 motion.' [Citation omitted]." 308 Kan. at 304. Newly discovered evidence can constitute an exceptional circumstance. *Trotter v. State*, 288 Kan. 112, 127, 200 P.3d 1236 (2009).

4

Alger argues that he showed exceptional circumstances because he established that his new medical evidence was unavailable at the time of his trial and his original K.S.A. 60-1507 motion. Alger also argues that under *Beauclair*, he advanced a "gateway actual innocence claim" and thus his motion cannot be procedurally barred. The State argues that Bonnell's affidavit does not contain new evidence; it simply rehashes information already presented to the jury at Alger's trial. The State also contends that Alger has not established exceptional circumstances because he fails to address why he did not raise this new evidence in his 2016 K.S.A. 60-1507 motion.

Alger fails to show exceptional circumstances. As the State points out, Alger erroneously focuses on how his new evidence was unavailable at the time of his trial and his 2007 K.S.A. 60-1507 motion. But exceptional circumstances are unusual events that prevented the movant "'[from] raising the issue in a *preceding* [K.S.A.] 60-1507 motion.'" (Emphasis added.) *Beauclair*, 308 Kan. at 304. Bonnell signed his affidavit in September 2015, more than eight months before Alger filed his 2016 K.S.A. 60-1507 motion. Alger does not explain why he did not raise this new evidence in his 2016 K.S.A. 60-1507 motion. Because Alger failed to show that exceptional circumstances prevented him from raising the evidence in Bonnell's 2015 affidavit in his 2016 K.S.A. 60-1507 motion, he is procedurally barred from raising it in his current motion. See *State v. Kelly*, 291 Kan. 868, 872-73, 248 P.3d 1282 (2011) (finding a movant's second K.S.A. 60-1507 motion successive when movant failed to show exceptional circumstances prevented him from raising a known claim in his first K.S.A. 60-1507 motion). Thus, the district court did not err in summarily denying Alger's K.S.A. 60-1507 motion as successive.

And contrary to Alger's contention, *Beauclair* does not hold that an actual innocence claim always defeats the procedural bar on successive motions. Alger conflates the exceptions to two separate procedural bars: the bar on untimely motions and the bar on successive motions. In *Beauclair*, our Supreme Court first addressed the district court's finding that Beauclair's motion was untimely and applied the manifest injustice

analysis, which included the "gateway innocence" language Alger relies on here. 308 Kan. at 294-304. The court then addressed whether Beauclair's motion was successive and applied the exceptional circumstances analysis. 308 Kan. at 304. These are two separate procedural bars with two separate exceptions. In fact, even though the court found that Beauclair might be able to establish manifest injustice preventing his motion from being barred as untimely, it still had to address whether his motion was successive because successiveness "poses an independent obstacle" to reaching the merits of the motion. 308 Kan. at 303-04.

Even so, we will assume that Alger is correct that an actual innocence claim can establish exceptional circumstances in order to defeat the procedural bar on successive motions. But even if we examine the substance of Bonnell's affidavit, we agree with the State that it simply rehashes information already presented to the jury. As the State points out, Alger's trial was essentially a "battle of the experts." No expert disputed that Alexis died from head trauma, but the major point of contention was when that trauma occurred. The State's experts opined that the trauma occurred immediately before Alexis was found unconscious and that she would not have been acting normal or playful after she sustained the trauma. Alger's expert witness was critical of the conclusions reached by the State's witnesses, and he opined that the fatal injury occurred hours or days before Alexis exhibited the symptoms.

Likewise, Bonnell criticizes the conclusions of the State's expert witnesses on whether Alexis' injury must have occurred immediately before she exhibited any symptoms. But this is exactly the type of conflicting evidence that was already presented to the jury, and the jury was aware that medical experts can disagree on the subject. K.S.A. 2019 Supp. 60-1507(f)(2)(A) provides that for purposes of finding manifest injustice, the term actual innocence "requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence."

6

Applying this standard, Bonnell's affidavit does not rise to the level of "new evidence" sufficient to establish actual innocence that would lead to a new trial for Alger.

And Bonnell's affidavit fails to establish actual innocence for an even more basic reason. Alger testified at trial that he had gotten rough with Alexis two days before she was found unconscious. He also admitted to the police detective that he was tired and cranky, and he "'slammed her on the potty and shook her.'" *Alger I*, 282 Kan. at 300. So even if the statements in Bonnell's affidavit are accepted as true, the trial evidence still supports a conclusion that Alger's physical abuse of Alexis caused her to later lose consciousness and led to her death.

In sum, the district court summarily denied Alger's third K.S.A. 60-1507 motion as being successive. For the reasons we have discussed, Alger fails to show exceptional circumstances to defeat this procedural bar.

Affirmed.

***

ATCHESON, J., concurring:  I concur in the result and, therefore, join in denying Aaron R. Alger relief based on the habeas corpus motion in front of us. The motion is both successive and untimely under K.S.A. 2019 Supp. 60-1507. The motion plainly can be denied because the evidence Alger has presented fails to establish a colorable claim of actual innocence excusing those procedural bars. I would do so for that reason alone.

As the majority explains, Alger presented an affidavit from Dr. Harry J. Bonnell, a forensic pathologist, that disputes some of the medical theories and conclusions the State's expert witnesses presented at Alger's trial in 2004 regarding the mechanics of the fatal injury to the two-year-old victim—primarily that the physical injury must have been inflicted nearly contemporaneously with the manifestation of symptoms. Dr. Bonnell

7

stated that he and others in the field no longer view those theories and conclusions as accepted medical principles. His assertions call into question the medical community's *current* acceptance of the premises behind the testimony from the State's experts. Assuming the accuracy of Dr. Bonnell's representations, the change in conventional medical understandings about these sorts of injuries does entail new information unavailable in 2004.

In this case, however, Dr. Bonnell's opinion does virtually nothing to support Alger's gateway claim that he is actually innocent—the claim he must advance to avoid the procedural bars of untimeliness and successiveness. In his affidavit, Dr. Bonnell does not question the testimony of the medical expert Alger called during the trial. Alger's expert testified that the injury could have been inflicted some time—hours or even days—before the victim showed any symptoms. Alger testified in his own defense and acknowledged that he had shaken the child when he lost patience with her two days before she lapsed into unconsciousness and five days before she died. The testimony paralleled a videotaped statement Alger gave a pair of detectives in which he admitted shaking and slamming the victim several days before she died. The jury watched the video during the trial.

In short, evidence presented during the trial, primarily the defense expert's testimony combined with Alger's accounts of his own conduct toward the victim, supports the jury verdicts notwithstanding Dr. Bonnell's affidavit and its implication Alger might be actually innocent. Indeed, that trial evidence conforms to what Dr. Bonnell represents to be the now widely accepted medical understandings about abusive head trauma. The district court, therefore, reached the right result in denying the 60-1507 motion without a hearing, and the majority similarly reaches the right result in affirming that ruling.

8

I do not, however, join in any suggestion that a claim of actual innocence sufficiently supported with competent evidence may be summarily dismissed simply because it has been presented in a successive or untimely 60-1507 motion. Under K.S.A. 2019 Supp. 60-1507(f)(2)(A), a "colorable claim" of actual innocence constitutes "manifest injustice" excusing the one-year time limitation for filing a habeas corpus motion. And a credible claim of actual innocence would present an exceptional circumstance permitting a successive 60-1507 motion. See *Beauclair v. State*, 308 Kan. 284, 304-05, 419 P.3d 1180 (2018). That showing would require the district court to hold an evidentiary hearing on the issue of actual innocence, as a gateway to considering the underlying claims for relief on their merits. 308 Kan. at 305. Nor do I endorse the idea that a claim of actual innocence backed with credible evidence may be summarily rejected simply because it could have been presented in an earlier 60-1507 motion.