NOT DESIGNATED FOR PUBLICATION

No. 119,821

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICHARD D. MILTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed June 21, 2019. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Richard D. Milton appeals the district court's summary denial of his K.S.A. 60-1507 motion. Milton claims the district court erred in denying his motion on the ground that it was untimely filed because he established manifest injustice to allow the motion to be filed out of time. We disagree with Milton's claim and affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In July 2007, Milton was convicted of four counts of rape, two counts of aggravated criminal sodomy, and two counts of aggravated indecent liberties with a child involving his biological daughter and two of her friends. The facts of the case are fully set out in *State v. Milton*, No. 99,584, 2010 WL 5139871, at *1-2 (Kan. App. 2010) (unpublished opinion):

"Richard and Anna Mae Milton were married in 1989. Their daughter, J.M., was born in 1991. In the fall of 2003, Anna Mae left Milton. After 1 or 2 weeks of living with Anna Mae, J.M. returned to live with her father. In January 2005, however, J.M. moved back with Anna Mae. On May 10, 2006, J.M. told Anna Mae that Milton had raped her. The next day, J.M. and Anna Mae went to the Bonner Springs police station and reported the rape to Detective Victoria Fogarty. J.M. told Fogarty about two other victims, E.H. and O.W., who were friends with J.M. E.H. was born in 1992 and O.W. was born in 1990. All three girls were subsequently interviewed at Sunflower House and confirmed that Milton had molested them.

"On June 14, 2006, at approximately 9 p.m., Fogarty interviewed Milton at the Bonner Springs police station. Prior to the interview, Fogarty instructed Milton as to his rights and Milton signed a written waiver. The interview was tape recorded. Milton admitted to having sex multiple times with J.M., admitted to touching O.W.'s genitals, and said that E.H. had tried to have sex with him. After the interview, Milton was arrested and transported to the Wyandotte County detention center.

"At a later date, while the recording of the interview was being transcribed, the tape player malfunctioned and the tape became stuck in the machine. When police department clerks attempted to remove the tape from the machine, the tape broke. Fogarty sent the tape to Heart of America regional forensic computer lab, where technicians repaired it as much as possible and transferred the audio onto a CD. Because of the tape breakage, however, 12 seconds or less of the audio was lost and not transferred to the CD.

"On June 19, 2006, the State charged Milton with four counts of rape of J.M., three counts of rape of E.H., two counts of aggravated indecent liberties with E.H., and one count of aggravated indecent liberties with O.W. On January 8, 2007, Milton filed a

2

motion to suppress, claiming that the statements made to Fogarty during the June 2006 interview were not given knowingly and voluntarily because Milton was so intoxicated during the interrogation that he did not know what he was doing or saying. Milton subsequently amended his motion to suppress to include the argument that he was not informed of his *Miranda* rights until after the custodial interrogation was completed.

"At the hearing on the motion to suppress, Officer Adam Doran of the Bonner Springs Police Department, who had transported Milton from the police station to the jail after his arrest, testified that he did not recall anything unusual about Milton or that Milton smelled like alcohol. Fogarty testified that she had advised Milton of his rights before beginning the interview and Milton appeared sober and coherent and understood her well enough that he corrected her several times throughout the interview. Fogarty stated that after she discussed Milton's rights with him but before she turned on the tape recorder to begin recording the interview, she discussed all of the allegations with Milton. After this conversation, which lasted about 30 minutes, Fogarty turned on the tape recorder.

"Milton also testified at the hearing. He stated that he had been drinking the entire day of his interview with Fogarty and that he was intoxicated when officers picked him up around 7:45 p.m. and took him to the police department to meet Fogarty. Further, Milton testified that he and Fogarty discussed all the facts of the case before she advised him of his rights. Milton also claimed Fogarty did not go over the *Miranda* warnings or give him the waiver to sign until after the statement was taped. Ultimately, the district court denied the motion and ruled that the statements could be used at trial.

"On May 17, 2007, the State filed an amended information, charging Milton with four counts of rape of J.M., one count of rape of E.H., two counts of aggravated indecent liberties with E.H., one count of aggravated indecent liberties with O.W., and two counts of aggravated criminal sodomy of J.M. The jury trial commenced on May 22, 2007. The State presented testimony from O.W.; E.H.; J.M.; the Sunflower House employees who interviewed the three girls; Juli Hurley, a police clerk who was present when the tape of Milton's statement to Fogarty broke; Robert Brown, a detective assigned to the forensic lab who repaired the tape and transferred the audio recording of the statement; Fogarty; Doran; and Anna Mae. During the trial, Milton objected to the admission of the statements he had made to Fogarty and to the admission of the recording.

3

"At the end of the State's case, the district court granted Milton's request to dismiss one count of aggravated indecent liberties with E.H. due to the State's failure to present any evidence of the conduct. Milton called only one witness, Deanna Conner, who had lived with Milton and J.M. for 2 months. Conner testified that she had never seen Milton act inappropriately with any of the girls. Rather, Conner testified she had seen E.H. act like she had a crush on Milton.

"The jury found Milton guilty of four counts of rape, two counts of aggravated criminal sodomy, and two counts of aggravated indecent liberties with a child. The district court imposed a controlling sentence of 429 months' imprisonment. Milton timely appealed." 2010 WL 5139871, at *1-2.

On direct appeal, Milton claimed that the district court erred by denying his motion to suppress his statements to the police and by admitting into evidence the recording of his police interrogation. He also claimed he was denied a fair trial based on prosecutorial misconduct during opening statement. 2010 WL 5139871, at *1. This court affirmed his convictions. 2010 WL 5139871, at *7. Our Supreme Court denied Milton's petition for review and the mandate was issued on February 15, 2011.

In November 2013, Milton filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel and many other claims. *Milton v. State*, No. 111,428, 2015 WL 6630375, at *2 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1252 (2016). The district court dismissed Milton's motion, finding that it was filed out of time and that Milton failed to establish manifest injustice to extend the deadline for filing the motion. 2015 WL 6630375, at *3. This court affirmed the dismissal of the K.S.A. 60-1507 motion based on it being untimely filed. 2015 WL 6630375, at *5. Specifically, this court found that Milton failed to provide "the trial court or this court with persuasive reasons or circumstances that prevented him from filing his K.S.A. 60-1507 motion within the 1-year time limitation." 2015 WL 6630375, at *4.

4

Milton filed the current pro se K.S.A. 60-1507 motion on May 10, 2017. Milton raised several issues in his motion, including ineffective assistance of trial counsel. Milton also filed a pro se memorandum of law in support of his claims.

Milton's K.S.A. 60-1507 motion made no claim that the time limit for filing the motion should be extended to prevent a manifest injustice. But Milton's 45-page memorandum of law in support of his motion discussed manifest injustice at various places in the memorandum. Milton argued that manifest injustice would exist because of cumulative error at trial and ineffective assistance of his trial counsel. He attached several letters from KU Law School's Project for Innocence to his memorandum discussing his claim of ineffective assistance of trial counsel. Ultimately, the law school declined to take Milton's case, finding that his counsel was not ineffective. Milton's memorandum also alluded to the fact that he had limited access to legal resources. Finally, the memorandum asserted actual innocence based on an affidavit from Emilio Juarez, a fellow inmate. In the affidavit, Juarez claimed to have had sex with one of Milton's victims. Juarez claimed he has a sexually transmitted disease that he might have given to Milton's victim, as opposed to the State's claim that Milton transmitted the disease to the victim.

In a memorandum decision filed on October 27, 2017, the district court denied Milton's K.S.A. 60-1507 motion without holding an evidentiary hearing. The district court noted that Milton filed his first K.S.A. 60-1507 motion in November 2013, and the motion was denied as untimely with no finding of manifest injustice. The district court found that Milton's current motion "fails to establish any basis for a finding of manifest injustice and is therefore time barred by K.S.A. 60-1507." Milton timely appealed.

ANALYSIS

On appeal, Milton claims the district court erred in denying his K.S.A. 60-1507 motion on the ground that it was untimely filed because he established manifest injustice

to allow the motion to be filed out of time. Milton also argues that exceptional circumstances exist to allow him to file a successive motion raising issues not previously addressed by the court. The State asserts that the district court properly denied Milton's motion as untimely because he failed to establish manifest injustice to allow the motion to be filed out of time.

When the district court summarily denies a K.S.A. 60-1507 motion, this court reviews the district court's decision de novo. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). This court must determine whether the motion, files, and records of the case show that the movant is entitled to no relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

The district court dismissed Milton's K.S.A. 60-1507 motion solely because it was untimely filed. Milton had one year from the date the mandate was issued in his direct appeal to file a K.S.A. 60-1507 motion. K.S.A. 2018 Supp. 60-1507(f)(1). The one-year limit "may be extended by the court only to prevent a manifest injustice." K.S.A. 2018 Supp. 60-1507(f)(2). The statute then states:

> "(A) For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2018 Supp. 60-1507(f)(2)(A).

On appeal, Milton asserts that he filed his most recent motion outside the one-year time limit because (1) the correspondence from Project for Innocence caused a delay in filing his motion, and (2) he had limited access to legal resources while in custody. He also argues that he asserted a colorable claim of actual innocence based on the Juarez affidavit. We will examine each assertion based on the record before us.

6

First, the letter from the Project for Innocence declining to take the case was sent to Milton in November 2011. After receiving the letter, Milton had another three months until February 15, 2012, to timely file his motion under K.S.A. 60-1507. He failed to do so, leading to his first K.S.A. 60-1507 motion being dismissed as untimely. Milton fails to explain why the November 2011 response from the Project for Innocence is relevant to his current motion filed more than five years later.

Second, Milton's argument that he had limited access to legal resources is also not enough to establish manifest injustice. According to Milton's memorandum in support his K.S.A. 60-1507 motion, he was only allowed to visit the law library every other day for one hour and he was not allowed to check out books. But Milton attached a list of rules related to the law library. The rules state that copies of legal materials can be made and taken out of the library itself, so Milton's access to the legal materials was not limited to just one hour every other day according to the library rules. In any event, this court has consistently held that limited access to a law library cannot establish manifest injustice. *Conley v. State*, No. 111,777, 2015 WL 7434746, at *4-5 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1251 (2016); *Roediger v. State*, No. 107,746, 2013 WL 1688890, at *3 (Kan. App. 2013) (unpublished opinion).

Finally, Milton argues manifest injustice exists because he has a colorable claim of actual innocence. To support his claim of actual innocence, Milton provides an affidavit from Juarez, a fellow inmate, who claimed to have had sex with one of Milton's victims. Juarez claims he has a sexually transmitted disease that he might have given to Milton's victim, as opposed to the State's claim that Milton transmitted the disease to the victim.

Milton fails to establish a colorable claim of actual innocence based on Juarez' affidavit. K.S.A. 2018 Supp. 60-1507(f)(2)(A) states that "the term actual innocence requires the prisoner to show that it is more likely than not that no reasonable juror would

7

have convicted the prisoner in light of new evidence." The Juarez affidavit falls far short of making a colorable claim of actual innocence based on the statutory standard.

Based on the motion, files, and records of the case, the district court did not err by dismissing Milton's K.S.A. 60-1507 motion as untimely. Milton failed to establish that manifest injustice would exist if he was not allowed to file his motion outside the one-year time limit. Because the district court dismissed Milton's motion solely because it was untimely filed, we need not address Milton's arguments on appeal that exceptional circumstances exist to allow a successive motion.

Affirmed.