NOT DESIGNATED FOR PUBLICATION

No. 121,562

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TREMAIN R. THOMPSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed September 4, 2020. Affirmed.

*Wendie C. Miller*, of Kenneth B. Miller, Atty at Law, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and WALKER, S.J.

PER CURIAM: Tremain R. Thompson appeals from the district court's summary denial of his motion under K.S.A. 2019 Supp. 60-1507. Although Thompson was convicted of numerous crimes related to a series of robberies in 2009, in his motion he focused solely on his convictions for the aggravated robbery and kidnapping of Norman Stiles after forcing Stiles at knifepoint to go to a Commerce Bank and withdraw money from an ATM. All of Thompson's claims related to a video of the robbery that he believes would have showed a different person committing the crimes. The district court found that the State never possessed the video in question and did not fail to disclose it to

1

Thompson. After careful review, we agree with the district court and affirm the summary dismissal of Thompson's K.S.A. 60-1507 motion.

FACTS

Thompson committed a string of crimes in Wichita, Kansas, throughout September 2009 and received numerous charges as a result of his conduct. In three cases consolidated for trial, Thompson was convicted of 12 counts of aggravated robbery, 1 count of aggravated burglary, and 2 counts of kidnapping. Thompson also pled guilty to violating offender registration laws as well as burglary and theft. As a result of these convictions, the district court sentenced Thompson to a total of 377 months' imprisonment for the jury trial and registration convictions, along with a concurrent 32-month sentence for the burglary and theft convictions.

Thompson appealed his convictions to our court, arguing that the district court erred in consolidating the charges and denying his motion to suppress witness identifications. He also contended that the district court violated his right to testify or remain silent, that two of his aggravated battery convictions were multiplicitous, that there was insufficient evidence to support some of his convictions, and that he was denied a fair trial based on cumulative error. A panel of our court affirmed Thompson's convictions, *State v. Thompson*, No. 106,494, 2013 WL 646479, at *1 (Kan. App. 2013) (unpublished opinion). Our Supreme Court denied review on June 21, 2017.

Thompson subsequently filed a K.S.A. 60-1507 motion on February 16, 2018. His claims are all related to his convictions in a single case, which was one of the cases consolidated for jury trial. In that case, Thompson was convicted of kidnapping and aggravated battery against Stiles.

Our court summarized the events leading up to Thompson's charges in its decision on his direct appeal.

> "[O]n September 29, Norman Stiles was at his home. A man came to his door between 4:30 and 5 p.m. and asked for a ride to get his brother's car. Stiles liked to help people, so he agreed to give the man a ride. Stiles took him where he requested, but the man changed his mind and told Stiles to take him somewhere else. Stiles complied, and as they were driving, the man told Stiles to pull over so he could get out. The man turned to Stiles and said, 'I want to give you something for doing this,' and he then reached into a yellow plastic bag, pulled out a large knife, and put it to Stiles' side. The man then told Stiles to take him to a Commerce Bank ATM and ordered Stiles to withdraw all the money in his account. Stiles did, and he gave the man the $80 from his account and $10 from his pocket. Stiles then took the man to another location, and as the man exited the car, he wiped down the door handles." *Thompson*, 2013 WL 646479, at *3.

After Thompson fled, Stiles called his wife and told her what happened. His wife then called 911, and Stiles spoke with a police officer shortly after arriving back home. The officer asked Stiles to look at a photo line-up with six photos, and Stiles circled individual number two, which was not Thompson, and wrote "[t]here is a similarity." Thompson was individual number five. However, the officer that showed Stiles the line-up testified that Stiles "couldn't make his mind up between two and five, he said they were both close."

A week later, a detective showed Stiles a second line-up. This time, Stiles circled photo number three, which was Thompson, and wrote "[t]his is the man" by the photo. At trial, Stiles testified that he was more confident about his identification in the second line-up than the first. The prosecutor asked Stiles if the man that asked for a ride was in the courtroom, and Stiles identified Thompson as the man who requested a ride. Ultimately, Thompson was convicted of kidnapping and aggravated battery against Stiles.

In his K.S.A. 60-1507 motion, Thompson argued that the State violated his due process rights when it failed to disclose or introduce the video recording from Commerce Bank related to the robbery of Stiles. Thompson also claimed that his trial counsel was ineffective for failing to introduce the same video, failing to object when the State did not introduce it, failing to perform a reasonable investigation, and failing to request a dismissal once the video was not introduced. He also argued prosecutorial misconduct because the State withheld the video from him. Lastly, he claimed the prosecutor and district court violated his rights to due process and a fair trial when the video from Commerce Bank was not introduced during trial. After reviewing the motion, files, and trial transcripts, the district court summarily denied Thompson's K.S.A. 60-1507 motion.

Thompson timely appeals.

ANALYSIS

Thompson argues the district court erred in summarily dismissing all his K.S.A. 60-1507 claims. When the district court summarily dismisses a K.S.A. 60-1507 motion, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

To be entitled to relief under K.S.A. 2019 Supp. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2019 Supp. 60-1507(b); Supreme Court Rule 183(g) (2020 Kan. S. Ct. R. 223).

*Thompson's due process rights*

Thompson's arguments on appeal are somewhat tangled. He claims that the State suppressed the ATM video evidence from Commerce Bank, but, as we shall see, this is not an accurate statement of the evidence. Essentially, Thompson argues the State violated his due process rights under the Fourteenth Amendment to the United States Constitution because it failed to disclose the ATM video from Commerce Bank in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and failed to preserve the video in violation of *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).

The three essential elements of a *Brady* violation claim include: (1) The evidence at issue must be favorable to the accused, in that it is either exculpatory or impeaching; (2) the evidence must have been either willfully or inadvertently suppressed by the State; and (3) the evidence must be material and establish prejudice. *State v. Warrior*, 294 Kan. 484, 506, 277 P.3d 1111 (2012); see *Banks v. Dretke*, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004). But, as the State points out, the defect in Thompson's argument is that "[t]here is no evidence in the record . . . that Commerce Bank had working video surveillance equipment at the ATM, that the equipment recorded Stiles' withdrawal from the ATM, that an ATM video from Commerce Bank ever existed, or that a video was ever in the State's possession."

The only trial testimony about whether the State ever possessed the video tape came from Detective Dan Binkley when he responded to questions from defense counsel.

"Q. Detective, was footage—did you get footage from the Commerce Bank ATM to see who was in the car with Mr. Stiles?

"A. I know that no footage was available. I know that I did not collect any footage from that ATM.

"Q. Okay. So there's no camera that will—there's no footage that will tell us who was in the car with Mr. Stiles when he was getting his money out; is that correct?

"A. That's correct.

. . . .

"Q. Okay. And do you know why they didn't get the film from the ATM or the bank?

"A. I know that with Detective [Warren] Dalrymple's retirement and the time frame that we have between Mr. Thompson's arrest and Mr. Dalrymple's—former Detective Dalrymple's retirement, and thus the timeframe between then and this Court proceeding, that enough time had elapsed that a lot of things weren't done when Detective Dalrymple retired; and therefore, between that time and this time there are things that had not been done.

"Q. Okay. And it got lost because of the time, kind of fell through the cracks with detectives leaving?

"A. You may say, yes."

Accordingly, the United States Supreme Court cases that Thompson cites do not support his position on this issue because in those cases the State at one point possessed the evidence that was not disclosed or lost. In *Brady*, the State withheld extrajudicial statements made by another defendant where the other defendant admitted to a homicide the petitioner was convicted of. 373 U.S. at 85. In *United States v. Agurs*, 427 U.S. 97, 100, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), the State failed to disclose the victim's prior criminal record to the defendant. In *California v. Trombetta*, 467 U.S. 479, 482, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), the police failed to preserve breath samples used in DUI cases. And in *Youngblood*, the police failed to preserve semen samples from a victim's body and clothing after the victim was molested. 488 U.S. at 52. Additionally, in *Youngblood* the United States Supreme Court rejected the assertion that a defendant's due process rights are violated when the police "fail to use a particular investigatory tool" and stated that "the police do not have a constitutional duty to perform any particular tests." 488 U.S. at 59.

6

The district court, when dismissing Thompson's K.S.A. 60-1507 motion, found that the State did not violate Thompson's rights regarding the video. Instead, it found:

> "At most, law enforcement may have been dilatory in seeking to obtain and preserve the ATM footage. However, Mr. Thompson filed a number of motions throughout the case.
>
> "Mr. Thompson did not file himself or through counsel a motion seeking to have the bank's ATM video footage preserved for the purpose of identifying the real robber. The jury was aware that law enforcement delays might have caused the footage to be lost; the jury was aware that Mr. Stiles had identified a different individual in the first photo line-up; they believed Mr. Stiles' identification of Mr. Thompson in court. This court questions Mr. Thompson's argument that a defendant has a due process right that can be violated if a law enforcement officer fails to obtain and preserve a private business's video evidence. Mr. Thompson has not submitted that authority, and the court has not sought for it. A defendant certainly has a right to point out such an investigatory shortcoming to the jury, and that happened in this case. Mr. Thompson's arguments and authorities about video created by government actors (law enforcement) are not supported by authority extending those cases to lost video evidence owned by non-governmental entities."

The record on appeal supports the district court's findings. The district court was correct that Thompson did not cite anything in his K.S.A. 60-1507 motion to support his claim that due process rights can be infringed when the State fails to obtain a particular piece of evidence. Thompson also fails to cite and support that contention on appeal.

"To justify a reversal of a conviction for failure to disclose evidence, the evidence withheld by the prosecution must be clearly and unquestionably exculpatory and . . . prejudicial to the defendant." *State v. Ruebke*, 240 Kan. 493, 505-06, 731 P.2d 842 (1987). Here, Thompson is unable to demonstrate that the ATM video evidence existed and was clearly exculpatory; he simply asserts that it would show someone else committing the robbery.

7

If "potentially exculpatory" evidence is lost or destroyed, then a defendant must show that the State acted in bad faith when it destroyed the evidence. *Youngblood*, 488 U.S. at 57-58. But, as the State points out, to trigger this test, the record must demonstrate that the State failed to preserve the evidence. 488 U.S. at 57. Stated differently, the record must demonstrate that the State at one point possessed the evidence at issue. Here, the record demonstrates that the State never had the ATM video evidence. The record also demonstrates that nobody had seen any ATM video from Commerce Bank or even that it existed.

Thus, the State did not suppress the evidence because it never had the video evidence from Commerce Bank. The State also did not fail to disclose or preserve the evidence, because, again, disclosure and preservation of a piece of evidence assumes the evidence was possessed at some point. As the district court pointed out, this may have been the result of lax or dilatory police work, but Thompson's jury was made fully aware of this lapse during his trial. The bottom line is that Thompson's due process rights under the Fourteenth Amendment were not violated by the State for failing to disclose or preserve evidence.

*Allegations of prosecutorial error*

Thompson also claims he was denied a fair trial under the Sixth Amendment to the United States Constitution due to prosecutorial error. Specifically, Thompson argues the prosecutor erred when he failed to disclose the same video previously discussed. Thompson's argument on this issue is similar to the argument he made on the prior issue. Aside from the appellate standard of review, Thompson's appellate brief only cites *State v. Salcido-Quintana*, No. 105,007, 2012 WL 3289942, at *9-10 (Kan. App. 2012) (unpublished opinion), to support his claim.

*Salcido-Quintana* involved a defendant accused of driving under the influence. The sheriff's deputy that stopped the defendant testified that his patrol vehicle "was equipped with a video recording system that activated when he turned on the vehicle's emergency lights." 2012 WL 3289942, at *1. The deputy stated that he followed all standard procedures to ensure the video was stored, but the State was ultimately unable to find or produce it.

The district court dismissed the case based on Salcido-Quintana's constitutional right to a speedy trial, and a panel of our court affirmed the district court's decision. 2012 WL 3289942, at *2. The entirety of the analysis section of the panel's opinion focused on Salcido-Quintana's speedy trial claim and applying the four-part test the United States Supreme Court set out for evaluating such claims in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *Salcido-Quintana*, 2012 WL 3289942, at *2-10. For multiple reasons, *Salcido-Quintana* is not helpful to Thompson in the present case.

First, Thompson does not assert anywhere in his brief that his constitutional or statutory rights to a speedy trial were violated. Second, in *Salcido-Quintana* the State was the entity that created the video and was in charge of maintaining its existence. Here, any potential video would have been created and possessed by a private entity, Commerce Bank. Third, our court found the State's failure to produce the video prejudiced Salcido-Quintana because the evidence at the hearing "generally supports the notion that the stop and arrest were recorded, then transferred to the server, and later archived in accordance with departmental procedures." *Salcido-Quintana*, 2012 WL 3289942, at *8. Obviously, none of those comments are relevant to any potential video in this case.

Here, the record does not suggest that any video from the ATM ever existed; in fact, it suggests the opposite. If such video existed, the State never possessed it. Thus, Thompson's claim of prosecutorial error fails because a prosecutor cannot fail to disclose evidence that was never in the State's possession.

9

*Allegations of trial and appellate counsel ineffectiveness*

Thompson next argues the district court should have held an evidentiary hearing to determine whether he received ineffective assistance of trial counsel because the issues cannot be conclusively decided by a review of the record alone.

The right of an accused to have assistance of counsel for his or her defense is guaranteed by the Sixth Amendment. The right is "applicable to state proceedings by the Fourteenth Amendment." *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). Moreover, the guarantee includes not only the presence of counsel but counsel's effective assistance as well. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). Thus, Thompson claims he was denied a constitutional right.

> "To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. [Citations omitted.] " *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. See *Fuller v. State*, 303 Kan. 478, 488, 363 P.3d 373 (2015). On appeal, we must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

In his K.S.A. 60-1507 motion, Thompson claimed that his counsel was ineffective for five reasons:  (1) Defense counsel failed to introduce the ATM video evidence during his preliminary hearing, (2) defense counsel failed to introduce the ATM video evidence

at trial, (3) defense counsel failed to do a reasonable investigation, (4) defense counsel failed to object after the State did not introduce the video evidence, and (5) defense counsel did not adequately familiarize herself with Thompson's case and failed to meet with him enough.

The district court, in summarily dismissing Thompson's claims, found that Thompson's trial counsel was not ineffective regarding the ATM video evidence. The district court stated that defense counsel would not have had sufficient time to obtain and offer the video at Thompson's preliminary hearing because the complaint was filed against him on October 8, 2009, and Thompson waived his right to a preliminary hearing on October 29, 2009. The district court also stated that Thompson did not file a motion himself or through counsel seeking to have the ATM footage preserved for the purpose of identifying a different person. Additionally, the district court noted that defense counsel pointed out the investigatory shortcomings to the jury. Finally, the district court commented that defense counsel could have attempted to subpoena the ATM video, but the district court believed that Thompson never told his counsel to get the video.

The district court's findings on this issue are supported by the record on appeal. Regarding the preliminary hearing, Thompson does not differentiate, in his motion or on appeal, between which counsel he alleged to be ineffective on this subissue. His motion and his appellate brief focus on the alleged ineffectiveness of Thompson's defense counsel at trial, Alice Osburn, but the trial court originally appointed Marcus Cooper as Thompson's counsel. Cooper represented Thompson from October 1, 2009, to August 13, 2010. Osburn was not appointed to represent him until September 8, 2010, which would have made it impossible for her to present any evidence at Thompson's preliminary hearing. Moreover, it was Thompson, not his counsel, who waived his right to a preliminary hearing.

11

Thompson also claims that defense counsel failed to adequately investigate the case. Specifically, Thompson alleges that defense counsel neglected to investigate police reports that showed Stiles identified someone other than Thompson in one of the photo arrays and failed to adequately familiarize herself with the case because she only met with Thompson a few times.

Thompson's claims that defense counsel failed to tell the jury that Stiles identified someone other than Thompson in one of the line-ups and failed to adequately familiarize herself with the case simply are not corroborated by the record. To the contrary, his defense counsel pointed out the fact that Stiles circled the incorrect person in one of the photo arrays when cross-examining Officer Greg Murray during trial. Defense counsel also asked Detective Binkley during trial whether Stiles failed to identify Thompson in one of the line-ups, and Binkley told her Stiles originally selected the wrong individual. Additionally, Thompson's counsel pointed out to the jury that the State failed to recover DNA evidence from Stiles' ATM card, that detectives failed to recover video evidence, and counsel cross-examined Stiles about the inconsistencies between Stiles' description of the knife used in the robbery and the knife in evidence.

Thompson's only claim that could potentially establish deficiency on the part defense counsel is his claim that defense counsel was ineffective because she failed to attempt discovery of the ATM video evidence herself. As the district court noted: "[T]rial defense counsel could have also attempted to subpoena the video footage from Commerce Bank."

In Thompson's K.S.A. 60-1507 motion, he alleges that he told defense counsel to request the video. But it is unlikely that a subpoena would have been able to recover any video since the earliest that Osburn could have subpoenaed the video would have been in September 2010, almost an entire year after the robbery took place. Furthermore, Thompson's assertion that the video would show someone else committing the robbery is

12

conclusory because nobody has ever seen any ATM video. Since the veracity of Thompson's assertion cannot be verified, the exculpatory value of any ATM video is questionable, especially in light of the evidence presented at trial linking Thompson to the kidnapping and aggravated robbery. Thus, even if Thompson can establish deficiency, the record demonstrates that he is unable to demonstrate prejudice. See *Salary*, 309 Kan. at 483.

Relatedly, Thompson claims his counsel was ineffective because she failed to introduce the video at trial and failed to object after the State did not introduce the video. Neither of these claims can establish that Thompson's counsel's performance was deficient because the record shows that, if a video did exist, the State never possessed it. Without possessing the video, the State could not introduce it at trial or disclose it to defense counsel. And without the State introducing the video, there would have been nothing for defense counsel to object to.

Finally, Thompson claims the district court erred because it did not discuss whether Thompson's direct appeal counsel was ineffective. But, as the State points out, Thompson failed to argue in his K.S.A. 60-1507 motion that his appellate counsel was ineffective. Thompson refutes the State's assertion by pointing to his answers on the K.S.A. 60-1507 paperwork where he alleged that he received ineffective assistance of trial and appellate counsel. But his memorandum in support specifically asserts that Osburn was ineffective and does not allege any arguments relating to his direct appeal counsel.

In this appeal of the denial of his K.S.A. 60-1507 motion, Thompson insists that we must remand this case for an evidentiary hearing to determine if his appellate counsel on direct appeal was ineffective for failing to make a *Brady* violation claim like the argument we have previously discussed. But any such claim would have failed on direct appeal for the same reason it fails in his K.S.A. 60-1507 motion—the existence of any

13

ATM video is questionable, and the State never saw or possessed any video even if it did exist. Thus, there could be no failure to disclose the evidence.

In sum, Thompson fails to show that his counsel's performance was deficient under the totality of the circumstances. Accordingly, Thompson is unable to satisfy the first prong of the ineffective assistance of counsel analysis. See *Salary*, 309 Kan. at 483. Thus, we affirm the district court's denial of Thompson's K.S.A. 60-1507 motion on ineffective assistance of trial and appellate counsel grounds.

*Failure of the trial court to declare a mistrial*

Thompson's final claim on appeal is that the district court erred when it failed to declare a mistrial under K.S.A. 22-3423(1)(c) after the State did not introduce the ATM video evidence at trial.

The State argues that we should not address Thompson's claim because it is a trial error that is not properly raised in Thompson's K.S.A. 60-1507 motion. Alternatively, the State contends that if we do address the issue, we should find that Thompson is not entitled to relief because no prejudicial conduct occurred that made it impossible to proceed with trial.

Supreme Court Rule 183(c)(3) (2020 Kan. S. Ct. R. 223-24) provides:

> "A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."

14

Thompson argues that we should address the issue based on his allegations of ineffective assistance of counsel and a due process violation, which can both qualify as exceptional circumstances. However, Thompson does not state why his circumstances warrant exceptional treatment beyond simply asserting that both claims can qualify as exceptional circumstances.

After careful review, we find no merit to Thompson's claims. Under K.S.A. 22-3423(1)(c), a district court is authorized to declare a mistrial if "[p]rejudicial conduct, inside or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." A trial court evaluating a motion for mistrial under K.S.A. 22-3423(1)(c) must first determine "whether prejudicial conduct resulted in a fundamental failure in the proceeding." *State v. Miller*, 308 Kan. 1119, 1162, 427 P.3d 907 (2018). If a fundamental failure occurred, the trial court then "considers whether an admonition, jury instruction, or other action can remove or sufficiently mitigate the damaging effects of the prejudicial conduct." 308 Kan. at 1162. If the fundamental failure makes it impossible to continue a trial without injustice, the court should declare a mistrial. 308 Kan. at 1162.

"'A trial court's decision denying a motion for mistrial is reviewed under an abuse of discretion standard. An appellate court divides the application of the abuse of discretion standard into two parts:  (1) Did the trial court abuse its discretion when deciding whether there was a fundamental failure in the proceeding? and (2) Did the trial court abuse its discretion when deciding whether the conduct caused prejudice that could not be cured or mitigated through admonition or jury instruction, resulting in an injustice?' [Citations omitted.]" 308 Kan. at 1162.

During trial, defense counsel only made one motion for a mistrial, during the testimony of Officer Murray. Defense counsel made the motion after Murray twice used the word "mug" in violation of an order in limine when referring to the photo arrays

15

shown to victims to identify Thompson. The district court denied Thompson's motion after hearing argument from defense counsel.

But Thompson never made a motion for mistrial concerning the ATM video evidence. His K.S.A. 60-1507 motion does not mention the denial for a mistrial concerning the district court's ruling related to Murray. Neither does his brief on appeal, which focuses solely the district court's failure to declare a mistrial after the ATM video, which the State never possessed, was not introduced into evidence. Apparently, Thompson believes the district court should have declared a mistrial sua sponte.

In summarily dismissing Thompson's K.S.A. 60-1507, the district court hearing the motion found that the trial court (who was a different judge) did not violate Thompson's rights regarding the video. That finding is supported by the record on appeal because the existence of the video that Thompson argues should have been introduced has not been established. As the evidence clearly demonstrated, if the video did exist, it was never possessed by the State, which would have made it impossible to introduce or disclose. Thus, there could not have been a fundamental failure in the proceedings that made it impossible for the trial to proceed without injustice. See K.S.A. 22-3423(1)(c). For this reason, the district court did not err when it failed to declare a mistrial.

In summary, the record clearly demonstrates that Thompson has failed to carry his burden to warrant remand for an evidentiary hearing on any the issues he brings on appeal. Thus, we affirm the district court's summary dismissal of Thompson's K.S.A. 60-1507 motion.

Affirmed.